In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.

Ohio Medical Instrument Co., Movant,

v.

Eagle–Picher Industries, Inc., et al., Respondent.

No. 01–00100.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Oct. 25, 2001.

Debra A. Dandeneau, Miami, FL, Douglas S. Tripp, Cincinnati, OH, for debtors.

Donald J. Rafferty, Cincinnati, OH, for Ohio Medical.

### DECISION ON MOTION OF OHIO MEDICAL INSTRUMENT CO.

BURTON PERLMAN, Bankruptcy Judge.

Ohio Medical Instrument Co. (hereafter "movant") filed Motion of Ohio Medical Instrument Company for Declaration Regarding Scope of Confirmed Plan. Movant is defendant in a state court case pending in Florida. Respondent is the "reorganized debtor" which emerged from the bankruptcy case. Herein we will use the term "debtors" to refer to the pre-confirmation debtors in the consolidated Chapter 11 case. Plaintiffs in the Florida case allege that their injuries were caused in part by a defective component part of a headrest manufactured by a division of debtors. Movant instituted a third-party action against respondent in the state court case seeking contribution and indemnification from respondent. Because respondent has asserted that movant is barred by the Confirmed Plan in the bank-

ruptcy case from pursuing its claim against respondent, movant filed the present motion for a declaratory judgment.

This court has jurisdiction to consider the present motion pursuant to the terms regarding retained jurisdiction in the Confirmed Plan, as well as pursuant to the order of reference of bankruptcy matters to this court. No issue was raised by either party to our jurisdiction.

The component part at issue was manufactured and sold by one of debtors' divisions prior to the date when the consolidated bankruptcy case was filed. The state court case was commenced in 1997 and it was then that movant first became aware of the claim asserted in the state court case. This was after the effective date following plan confirmation in the consolidated bankruptcy cases. In the state court case, plaintiffs assert a product liability tort claim and it is in regard to that that movant in its third-party complaint in the state court case seeks contribution and indemnity from respondent.

The following provisions of the Confirmed Plan are pertinent here.

1.1.95 *Other Product Liability Tort Claim:* Any Product Liability Tort Claim as to which the facts or existence of first become apparent to the holder of such Claim after the Effective Date other than Asbestos Personal Injury Claims and Lead Personal Injury Claims.

In turn, the Confirmed Plan defines Product Liability Tort Claim in § 1.1.106:

1.1.106 *Product Liability Tort Claim:* Any right to payment, claim, remedy, liability, or Demand, now existing or hereafter arising, whether or not such right, claim, remedy, liability, or Demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unse-

cured, whether or not the facts of or legal bases for such right, claim, remedy, liability, or Demand are known or unknown, for, under any theory of law, equity, admiralty, or otherwise, death, bodily injury, or other personal damages (whether physical, emotional, or otherwise) to the extent caused or allegedly caused, directly or indirectly, by exposure to any products or byproducts that were manufactured, sold, supplied, produced, released, distributed, or in any way marketed by any of the Debtors prior to the Petition Date, including, without express or implied limitation, any right, claim, remedy, liability, or Demand for compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general, and special damages), including punitive damages, and including, without express or implied limitation, any Asbestos Personal Injury Claim or Lead Personal Injury Claim.

■ On this motion it is the position of movant that its claim is excluded from the discharge effect of the Confirmed Plan by the express terms of the Plan. Respondent argues to the contrary that the Plan only excludes direct claims and not claims for contribution and indemnification, and that movant's claim is barred by the failure of movant to file a claim by the bar date set in the course of the bankruptcy case.

In support of its position, respondent argues first that movant's claim for contribution and indemnity does not fall within the Plan definition of "Other Product Liability Tort Claims." Recognizing that the Plan definition of "Other Product Liability Tort Claims" incorporates the further definition of "Product Liability Tort Claim," respondent says that "Product Liability Tort Claim is ... essentially, a claim for 'death, bodily injury, other personal damages.'" Respondent follows this comment

by remarking that § 1.1.106 "contains numerous examples of the types of claims which are meant to be included within the definition," but omits from the definition any mention of third-party claims such as that asserted by movant. Respondent says further that "... the definition contains references only to *direct* claims that could be asserted by an injured party against Eagle–Picher." Further, respondent argues that most courts hold that a product liability tort claim arises for bankruptcy purposes when the product is manufactured, sold or distributed even if injury occurs later, and this would apply as well to claims for contribution or indemnification. Respondent then proceeds to argue, on the basis of *Epstein v. Official Comm. of Unsecured Creditors (In re Piper Aircraft, Corp.),* 58 F.3d 1573 (11th Cir.1995), that respondent would be discharged from claims related to post-confirmation injuries where there was a relationship or contact between the claimant and respondent before the effective date of the Plan. It is respondent's position that the sale of the appliance in question prior to the petition date establishes such an earlier relationship. Finally, respondent refers to other provisions of the Plan which expressly include contribution claims, and respondent asserts that the absence of such language from § 1.1.106 is evidence of an intention that indemnity and contribution claims be excluded from the coverage of § 1.1.106.

■ It is fundamental in bankruptcy law that a confirmed Chapter 11 plan is to be regarded as a contract. *In re UNR Industries, Inc.,* 212 B.R. 295, 301 (Bankr. N.D.Ill.1997). Where the words of a contract have a plain meaning, the court has no alternative but to interpret the plan in accordance with that plain meaning. 17A Am.Jur.2d, Contracts §§ 337, 359. The definition of "Other Product Liability Tort Claims" incorporates in its definition that for "Product Liability Tort Claims," and that definition includes the language "Any right to payment ... to the extent caused or allegedly caused, *directly or indirectly,* by exposure to any products or byproducts that were manufactured, sold, supplied, produced, released, distributed or in any way marketed by any of the Debtors prior to the Petition Date." (Emphasis supplied.) The court holds that the Plan language is unambiguous, and in the face of its express language, respondent cannot argue that "Other Product Liability Tort Claim" is limited to only direct claims. The arguments of respondent cannot here avail it.

Debtors argue that *Piper Aircraft* should lead to a different conclusion, but we find that case distinguishable. In *Piper Aircraft,* the court was dealing with definition of the word "claim." That is not the concern here. We deal instead with interpretation of the Plan as a contract.

We will therefore hold that the Product Liability Contribution Claim asserted by Ohio Medical Instrument Company is not barred or discharged by the Confirmed Plan, and that Ohio Medical Instrument Company is permitted to proceed on its third-party complaint against respondent in the litigation pending in Florida.

## JUDGMENT ON DECISION BY THE COURT

Movant's motion for declaratory judgment having come on for consideration before the court, Honorable Burton Perlman, United States Bankruptcy Judge, presiding, and the issues having been duly considered and a decision having been rendered,

It is Ordered and Adjudged that the Product Liability Contribution Claim of Ohio Medical Instrument Company is not barred or discharged by the Confirmed Plan, and

It is further Ordered that Ohio Medical Instrument Company may proceed on its third-party complaint against Eagle–Picher in the pending Florida case.